UNITED STATES of America

v.

Keith G. WRIGHT, Appellant.

No. 91–3244.

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 8, 1993.

Decided Oct. 15, 1993.

James T. Maloney, Washington, DC (appointed by the Court) argued the cause, for appellant.

Robert T. Swanson, Asst. U.S. Atty., Washington, DC, argued the cause, for appellee. With him on the brief were Jay B. Stephens, U.S. Atty. at the time the brief was filed, John R. Fisher and Roy W. McLeese, III, Asst. U.S. Attys., Washington, DC.

Before: MIKVA, Chief Judge, WALD and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Chief Judge MIKVA.

MIKVA, Chief Judge:

Keith G. Wright appeals his conviction on two counts of distributing crack cocaine. As grounds for reversal, Mr. Wright asserts that the district court abused its discretion in dismissing his previous indictment without prejudice to reprosecution under the Speedy Trial Act. Although we have concerns about the ad hoc nature of the Government's procedures for complying with the Speedy Trial Act, we hold that the district court did not abuse its discretion and we affirm Mr. Wright's subsequent conviction.

## I. Background

Appellant Keith Gregory Wright was arrested on February 26, 1990 for selling crack cocaine to an undercover police officer. On March 27, 1990, he was indicted for conspiracy to possess with intent to distribute and/or conspiracy to distribute cocaine, distribution of cocaine (3 counts), and using and carrying a firearm in connection with the conspiracy to distribute cocaine. His attorney filed three pretrial motions, opposed by the Government, on June 6 and June 13. After a hearing on July 11, the district court took all three motions under advisement; on July 19 the court denied one of the three.

Thereafter, because of scheduling difficulties, the district court apparently lost track of the defendant. The court did not initially set a trial date, and thus there was no "triggering" mechanism to bring the case back to the court's attention. According to the district judge, "[t]he case simply escaped the collective consciousness of the Court's chambers. The same appears to have happened to the United States Attorney's Office and defense counsel, quite understandably, like the legendary Scheherezade, discreetly remained silent."

On October 2, 1990, Mr. Wright and his attorney broke their silence: they moved to dismiss the indictment under the Speedy Trial Act, alleging that 87 non-excludable days had passed since Mr. Wright's indictment (the Act allows only 70 days). The district judge held a hearing on October 5, in which he explained the oversight, apologized to Mr. Wright, and ruled on the last two motions he had taken under advisement (denying both). In its October 12 response to defendant's Speedy Trial motion, the Government admitted that it had exceeded the statutory period and that the Act required dismissal. The parties then briefed the issue of whether that dismissal ought to be with or without prejudice to reprosecution.

On October 24, 1990, the district court dismissed the indictment without prejudice. In a brief order, the court considered each of the three statutorily required factors: the seriousness of the crime, the facts and circumstances leading to the violation, and the impact of reprosecution on the administration of the Act and on the administration of justice. 18 U.S.C. § 3162(a)(2). He ruled that the offenses charged were serious; that the violation was not a product of abuse by the Government but was merely an "isolated unwitting violation"; and that there would be no adverse impact from reprosecution.

The Government subsequently re-indicted Mr. Wright on two counts of distribution of cocaine. After a jury trial in May 1991, during which the defense presented no evidence, Mr. Wright was convicted on both counts. He appeals only the district court's October 24, 1990 ruling dismissing his Speedy Trial Act claim without prejudice.

## II. Analysis

The Speedy Trial Act, 18 U.S.C. § 3161, *et seq.* ("Act"), requires that a criminal defendant be brought to trial within 70 days of indictment, 18 U.S.C. § 3161(c)(1), excluding certain specified reasons for delay. 18 U.S.C. § 3161(h). In this case, the Government concedes that it failed to try Mr. Wright within 70 non-excludable days and thus violated the Act. Specifically, the Government and Mr. Wright agree that the delay totaled 87 non-excludable days as of October 2, 1990, the day defendant filed his motion to dismiss.

 Upon a violation and upon defendant's motion, the Speedy Trial Act requires the district court to dismiss the indictment. 18 U.S.C. § 3162(a)(2). The pivotal issue in this case is whether that dismissal should be with or without prejudice. The Act reads:

> In determining whether to dismiss the case with or without prejudice, the court shall consider, among others, each of the following factors: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of this chapter and on the administration of justice.

18 U.S.C. § 3162(a)(2). In the authoritative case on this provision, the Supreme Court has observed that Congress left the prejudice decision "to the guided discretion of the district court." *United States v. Taylor*, 487 U.S. 326, 335, 108 S.Ct. 2413, 2419, 101 L.Ed.2d 297 (1988); *see also United States v. Bittle*, 699 F.2d 1201, 1208 (D.C.Cir.1983). The statute itself does not favor either form of dismissal over the other. *Taylor*, 487 U.S. at 334–35, 108 S.Ct. at 2418–19. Thus, an appellate court should review a district court's decision under this provision only for abuse of discretion: The question is whether the district court considered the prescribed factors and clearly articulated their effect on its decision. *Id.* at 336–37, 108 S.Ct. at 2419–20. "[W]hen the statutory factors are properly considered, and supporting factual findings are not clearly in error, the district court's judgment of how opposing consider-

ations balance should not lightly be disturbed." *Id.* at 337, 108 S.Ct. at 2420.

### A. *Seriousness of the Offense*

█ At the time the district court ruled on his motion to dismiss under the Speedy Trial Act, Mr. Wright had been indicted on: two counts of distribution of 50 or more grams of cocaine base; one count of distribution of 5 or more grams of cocaine base; one count of conspiracy to possess with intent to distribute and/or conspiracy to distribute 50 or more grams of cocaine base; and one count of using and carrying a firearm during and in relation to the conspiracy offense. The district court correctly characterized these offenses as "serious" for purposes of the Speedy Trial Act's first factor, and weighed that factor against the defendant in deciding whether to dismiss with or without prejudice.

Mr. Wright does not directly dispute this finding, but he complains that the deluge of drug cases in the federal courts renders virtually every crime "serious" for Speedy Trial Act purposes. We join Mr. Wright in lamenting the number of grave offenses that come before the district court. But we note that his is hardly the least grave among them. We decline to hold that the number of serious offenses committed in the District of Columbia, or the number tried in federal court, can diminish the seriousness of a particular defendant's crimes for Speedy Trial Act purposes. The district court should judge the seriousness of an offense upon its own merits, and not by whether or not it is commonplace.

### B. *Facts and Circumstances Leading to the Violation*

Mr. Wright argues that the district court abused its discretion by treating the failure to bring Mr. Wright to trial as a "neutral factor," rather than as a point against the Government. According to Mr. Wright, the Government has the burden of bringing a defendant to trial on time; any failure to do so is the Government's failure and supports a dismissal with prejudice. But Mr. Wright's argument obfuscates the issue. Carried to its logical extreme, its implication is contrary to the language of the statute, to precedent, and to the policies behind the Speedy Trial Act.

█ The statute clearly does not presume that every violation of the Act ought to trigger a dismissal with prejudice. On the contrary, it explicitly grants discretion to the district court to decide what form of dismissal is appropriate, based partly on the facts and circumstances that led to the violation. As *Taylor* states, an important part of the "facts and circumstances" inquiry is whether the Government has engaged in a "pattern of neglect," or, in contrast, whether the violation represents an "isolated unwitting violation." *Taylor*, 487 U.S. at 339, 108 S.Ct. at 2420–21. Several circuit courts have emphasized this distinction in evaluating prejudice decisions under the Act. *See, e.g., United States v. Kottmyer*, 961 F.2d 569, 572–73 (6th Cir.1992) (dismissing without prejudice because no "pattern" or "intentional dilatory conduct" was shown); *United States v. Giambrone*, 920 F.2d 176, 180–82 (2d Cir.1990) (finding a "pattern of neglect" in a particular United States Attorney's Office); *see also United States v. Arango*, 879 F.2d 1501, 1508 (7th Cir.1989); *United States v. Kiszewski*, 877 F.2d 210, 214–15 (2d Cir.1989). Similarly, in the present case the district court ruled explicitly that this was an "isolated unwitting violation," and that "there was no abuse whatsoever by the Government; this case simply inadvertently was overlooked." Moreover, the district judge himself accepted much of the blame for the delay. Apparently relying on *Taylor*, the court took these facts as militating in favor of dismissal without prejudice.

█ We agree with that approach. While the Government bears a large part of the responsibility for bringing a defendant to trial within the statutory period, the Act does not require the court to consider the Government's "burden" in the prejudice inquiry. On the contrary, that burden is embodied in the *requirement of dismissal* if the Government fails to meet the deadline. In contrast, the decision of whether to dismiss *with or without prejudice* already assumes the Government's failure; the inquiry becomes *why* the Government failed. The district court held that the Government failed for relatively

unobjectionable reasons. Thus, far from treating the "facts and circumstances" factor as "neutral," the court correctly regarded this factor as militating *against* the defendant.

Indeed, as the Supreme Court has observed, Mr. Wright's approach would require dismissal with prejudice in virtually every case. *Taylor*, 487 U.S. at 342, 108 S.Ct. at 2422 ("If the greater deterrent effect of barring reprosecution could alone support a decision to dismiss with prejudice, the consideration of the other factors identified in § 3162(a)(2) would be superfluous, and all violations would warrant barring reprosecution."). This result would contradict both the plain terms and legislative history of the Speedy Trial Act, which grant the district court discretion to choose between the two dismissal options, and which accord these options equal weight. *Id.* at 334–35, 108 S.Ct. at 2418–19. We therefore affirm the district court's resolution of the "facts and circumstances" factor.

Before leaving this issue, though, we must note that the facts of this case indicate that the United States Attorney's Office may need to rethink *its* scheme for complying with the Speedy Trial Act. At oral argument, the Government was asked to explain how Mr. Wright's case managed to escape its attention. The Government had no ready answer, but noted that the Speedy Trial Plan for the district court places the responsibility for monitoring compliance with the clerk of the court. Speedy Trial Plan of the United States District Court for the District of Columbia, Local Rule 306 at 22. Beyond that, the Government noted that the responsibility for complying with the Act within the U.S. Attorney's Office itself lies with the individual Assistant U.S. Attorney handling the case.

■ Although this court is aware of no data on the number of cases dismissed as a result of this policy, we are troubled by the Government's ad hoc approach. Congress has directed that all federal criminal defendants be brought to trial within a specified period. It is up to the United States Attorney's Office, as well as the district court, to ensure that Congress's demands are met. The existence of a Speedy Trial Plan giving the clerk of the district court authority to monitor compliance does not relieve the U.S. Attorney's Office of its own responsibility. The U.S. Attorney risks failure in discharging that responsibility when his office lacks any centralized mechanism to monitor compliance.

Although the decision whether to dismiss with or without prejudice remains within the discretion of the trial court, we remind the Government that one of the determining factors in the analysis guiding that discretion is whether the violation of the Act represents an "isolated unwitting violation" or, alternatively, whether it evidences a "pattern of neglect" on the Government's part. *Taylor*, 487 U.S. at 339, 108 S.Ct. at 2420–21; *see supra* page 814. The district court in this case found an isolated violation, and we have no cause to question that decision based on the facts before us. But we note that if the United States Attorney's Office persists in its ad hoc method of compliance, and if that method leads to more violations of the Act, the Government's "lackadaisical attitude" toward enforcing Congress's directives could well be used as evidence of a "pattern of neglect." *See Taylor*, 487 U.S. at 338, 108 S.Ct. at 2420.

### C. *Impact of Reprosecution*

■ Mr. Wright argues that the district court again abused its discretion by failing adequately to consider the third statutory factor: "the impact of a reprosecution on the administration of [the Speedy Trial Act] and on the administration of justice." 18 U.S.C. § 3162(a)(2). Appellant challenges the court's "bald assertion" that no adverse consequences would follow from reprosecution, and he argues that the judge should have considered whether dismissal with prejudice would foreclose other punitive alternatives (such as prosecution under District of Columbia law) and whether reprosecution would clog the court's docket. But Mr. Wright ignores the analysis the district court did provide. The court held that the defense was not hampered by the delay, that the defendant could credit time served in pretrial detention against his ultimate prison term (if any), and that the principles of the

Act were vindicated in part by the court's public apology to Mr. Wright for its oversight. Although we are unwilling to hold that an apology (however appropriate) may satisfy the dictates of the Act, we do hold that the district court adequately considered the third statutory factor.

As an initial matter, we must note that this third factor cannot be viewed in isolation from the others. Whether a dismissal without prejudice will have an adverse impact on the administration of the Act or on the administration of justice depends, in large part, on the seriousness of the defendant's alleged crime and on the reasons for the delay. If the Government had intentionally delayed Mr. Wright's trial or if it had evidenced a "lackadaisical attitude" toward compliance with the Act, then the court would have been remiss in failing to weigh these facts against the Government in considering whether dismissal without prejudice would adversely affect the interest of justice and the policies behind the Speedy Trial Act. *See, e.g., United States v. Jones,* 887 F.2d 492, 495–96 (4th Cir.1989); *United States v. Simmons,* 786 F.2d 479, 486 (2d Cir.1986).

In this case, the district court found the opposite: that the defendant's crime was serious and that the violation was unintentional and isolated. Mr. Wright does not contest these findings. That the district court made these findings in the context of the first two factors does not diminish their relevance to the third factor. The Speedy Trial Act requires the court to discuss each of the statutory factors and to make a reasoned decision, but it does not mandate any particular formula or order of decisionmaking. On the contrary, the district court need only exercise its discretion with regard to all the facts before it and provide a sufficient record to allow for meaningful appellate review. In Mr. Wright's case, the district court did precisely that.

In addition, in its explicit discussion of the third factor the court noted the lack of prejudice to the defendant from the delay. As the Supreme Court and this court have both held, this is a relevant consideration. *Taylor,* 487 U.S. at 340–41, 108 S.Ct. at 2421–22; *United States v. Bittle,* 699 F.2d 1201, 1208 (D.C.Cir.1983). Because Mr. Wright never alleged any prejudice from the seventeen-day violation, the court appropriately took this fact to support dismissal without prejudice.

Indeed, Mr. Wright does not really contest the findings that the district court made. Instead, his primary grievance centers on findings that the court did not make with regard to other facts relevant to the administration of the Act and to the administration of justice. Mr. Wright asserts that the court should have evaluated the effect of reprosecution on the court's own docket and that it should have considered whether other avenues of prosecution (such as prosecution in D.C. Superior Court) would have been open to the Government in the event of dismissal with prejudice. Mr. Wright is correct that these may be relevant considerations in an appropriate case. But a judge need not consider them in every case, particularly when (as was probably true here) they could not have swayed the outcome of his decision. The Speedy Trial Act does not require a judge to negate every possible ground for dismissal with prejudice. It requires no more than a reasoned exercise of discretion in accordance with the statutory factors.

## III. Conclusion

Defendant would have us construct a procedural maze for the district court to work through in exercising its discretion under the Speedy Trial Act. That is not an appropriate use of this statute, which was designed to improve, not catechize, the administration of our criminal justice system. This court finds that the district court did not abuse its discretion in dismissing Mr. Wright's original indictment without prejudice to reprosecution. Accordingly, we affirm Mr. Wright's conviction.

*So ordered.*