FILED
United States Court of Appeals
Tenth Circuit

August 3, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

　　　　Plaintiff - Appellee,

v.

MARLO L. TOOMBS,

　　　　Defendant - Appellant.

No. 08-3278

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 06-CR-20057-CM-1)**

---

Melanie Morgan, Morgan Pilate LLC, Olathe, Kansas, for Appellant.

Terra D. Morehead, Assistant United States Attorney (Marietta Parker, Acting
United States Attorney, with her on the brief), Kansas City, Kansas, for Appellee.

---

Before **MURPHY**, **SEYMOUR**, and **TYMKOVICH**, Circuit Judges.

---

**MURPHY**, Circuit Judge.

---

## I. INTRODUCTION

Following his arrest on and arraignment for various drug and firearm

possession charges, defendant Marlo Toombs remained incarcerated for

approximately twenty-two months before his trial began. During this time period, the district court granted seven continuances under the ends-of-justice provision of the Speedy Trial Act, 18 U.S.C. § 3161(h)(7) ("ends-of-justice continuances"). In a motion to dismiss, Toombs claimed the district court failed to make the requisite factual findings when it granted the ends-of-justice continuances, and therefore over seventy non-excludable days had passed between his arraignment and trial in violation of the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). The district court denied the motion to dismiss, concluding it had made the factual findings required by the Speedy Trial Act for each of the continuances. The matter then proceeded to trial, and Toombs was convicted on all counts. On appeal, Toombs challenges, *inter alia*, the denial of his motion to dismiss. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we **affirm** in part, **reverse** in part, and **remand** for proceedings consistent with this opinion.

## II. BACKGROUND

On April 26, 2006, Toombs and co-defendant Arlynda Osborn were indicted for various firearm and drug possession offenses. Toombs was arraigned on May 2, 2006, and remained incarcerated for approximately twenty-two months preceding his trial, which began on March 4, 2008. During the time period between Toombs's arraignment and trial, the district court granted nine continuances, the latter seven of which were granted pursuant to the ends-of-justice provision of the Speedy Trial Act:

1. On May 22, 2006, defense counsel moved for additional time to file pretrial motions, contending he had not yet received discovery. The motion contained a limited waiver of Toombs's Speedy Trial Act rights and stated the government had no objection to the continuance. In its order granting the motion, the district court excluded the time from May 22, 2006 to July 10, 2006, for purposes of the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(D).

2. On June 19, 2006, defense counsel moved again for additional time to file pretrial motions, contending counsel had not yet received discovery. The motion contained a limited waiver of Toombs's Speedy Trial Act rights and stated the government had no objection to the request. In its order granting the motion, the court excluded the time from June 19, 2006 to July 31, 2006, for purposes of the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(1)(D).[1]

3. On August 31, 2006, defense counsel filed a motion to continue on the grounds that new counsel needed additional time to review discovery and prepare for trial.[2] On September 5, 2006, the district

---

[1]We offer no opinion as to the legal propriety of the first and second continuances because Toombs does not challenge the exclusion of the corresponding time periods from the seventy-day limit set forth in the Speedy Trial Act. See 18 U.S.C. § 3161(h)(1)(D) (excluding from seventy-day requirement "delay resulting from any pretrial motion, *from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion* (emphasis added)).

[2]The history of this motion is as follows: On June 29, 2006, an entry of appearance as counsel for the defense was filed by Ray Sousley and Daniel Ross. No pre-trial motions were filed, and on July 26, 2006, the district court set the matter for trial on September 5, 2006. A status conference was held on August 7, 2006, at which time defense counsel did not appear, and the hearing was continued to August 14, 2006. At the status hearing held on August 14, 2006, it was determined Sousley was unaware his appearance had been entered on Toombs's case because his law partner, Ross, who is not licensed in Kansas, had filed the entry of appearance for both attorneys. Sousley indicated he had spoken to Toombs and advised him that they would be requesting a continuance. Sousley indicated a motion to continue would be filed immediately if it had not been filed already. The district court then inquired of Toombs about the situation and

(continued...)

court, for good cause, granted the motion to continue, stating that the ends of justice outweighed the best interest of the public and the defendant in a speedy trial under 18 U.S.C. § 3161(h)(7).[3] The district court excluded the time from August 31, 2006 to November 6, 2006, the new trial date, for purposes of the Speedy Trial Act.

4. On October 23, 2006, the government filed a motion to continue contending it was making a concerted effort to locate and arrest co-defendant Osborn. The motion stated the evidence against Toombs would be largely the same as that against Osborn, who remained a fugitive. The motion further stated counsel for Toombs had no objection to the continuance. The district court granted the continuance on October 27, 2006, finding that the basis of the continuance was proper under the provisions of 18 U.S.C. § 3161(h)(6) and the ends of justice outweighed the best interest of the public and the defendant in a speedy trial under 18 U.S.C. § 3161(h)(7). The court excluded the time from October 23, 2006 to February 5, 2007, the new trial date, for purposes of the Speedy Trial Act.

5. On January 23, 2007, defense counsel filed a motion to continue stating he needed more time to prepare for trial due to three other cases for which he was scheduled to appear in the weeks before Toombs's scheduled trial date. The motion stated the government did not object to the continuance. The district court granted the motion on February 5, 2007, stating the ends of justice served by granting the continuance outweighed the best interest of the public and the defendant in a speedy trial under 18 U.S.C. § 3161(h)(7). The court excluded the time from January 23, 2007 to May 7, 2007, the new trial date, for purposes of the Speedy Trial Act.

---

[2](...continued)
Toombs indicated he had no objection to the continuance.

[3]The 2008 amendments to the Speedy Trial Act eliminated, *inter alia*, one subsection of 18 U.S.C. § 3161(h). Pub. L. 110-406, § 13, 122 Stat. 4291, 4294 (2008). Before those amendments, what is now subsection (7) was subsection (8). To avoid confusion, in describing the orders and opinions of courts issued before the 2008 amendments, reference is to the subsections as they are currently numbered.

6. On April 30, 2007, defense counsel filed a motion to continue stating additional discovery had recently been disclosed requiring additional investigation. The motion further stated the government had no objection to the continuance. On May 1, 2007, the district court issued an order granting the continuance "in order for the defense to adequately prepare and for the reasons stated in the motion." The order further stated the ends of justice outweighed the best interest of the public and the defendant in a speedy trial pursuant to 18 U.S.C. § 3161(h)(7). The court excluded the time from April 30, 2007 to July 9, 2007, the new trial date, for purposes of the Speedy Trial Act.

7. On July 5, 2007, defense counsel filed another motion to continue based upon newly disclosed discovery. The motion was nearly identical to the April 30, 2007 motion. On July 10, 2007, in an order identical to the May 1, 2007 order with the exception of the dates provided, the district court granted the continuance "in order for the defense to adequately prepare and for the reasons stated in the motion." The order further stated the ends of justice outweighed the best interest of the public and the defendant in a speedy trial pursuant to 18 U.S.C. § 3161(h)(7). The court excluded the time from July 5, 2007 to September 4, 2007, the new trial date, for purposes of the Speedy Trial Act.

8. On August 14, 2007, Toombs retained the services of Melanie Morgan, who entered her appearance as counsel of record. On August 24, 2007, defense counsel filed a motion to continue which detailed the current status of the case and indicated she needed additional time to review discovery and prepare for trial. On August 28, 2007, the district court issued an order granting the continuance. The order stated the ends of justice outweighed the best interest of the public and the defendant in a speedy trial pursuant to 18 U.S.C. § 3161(h)(7). The court excluded the time from August 24, 2007 to November 5, 2007, the new trial date, for purposes of the Speedy Trial Act.

9. On October 24, 2007, the government filed a motion to continue on the grounds that Osborn had been arrested and was in federal custody en route to Kansas. Toombs filed a motion to sever on October 29, 2007, arguing the lengthy delay that would be caused by a joint trial was unreasonable and asserting his Sixth Amendment

right to a speedy trial. A hearing was held and the district court denied the motion to sever. The district court then issued an order granting the government's requested continuance. The order stated that the basis of the continuance was proper under the provisions of 18 U.S.C. § 3161(h)(6) and the ends of justice outweighed the best interest of the public and the defendant in a speedy trial under 18 U.S.C. § 3161 (h)(7). The court excluded the time from October 24, 2007 to the commencement of the trial, not yet scheduled, for purposes of the Speedy Trial Act.

On December 11, 2007, Toombs filed a motion to dismiss alleging a violation of his Sixth Amendment right to a speedy trial. The district court denied this motion. On February 26, 2008, Toombs filed another motion to dismiss. In this motion, Toombs alleged the district court erroneously excluded the time periods identified in the seven ends-of-justice continuances because it did not make the factual findings required by the ends-of-justice provision of the Speedy Trial Act. Toombs argued that over seventy non-excludable days had passed between the time of his arraignment and the start of the trial in violation of the Speedy Trial Act, 18 U.S.C. § 3161(c)(1).

At the hearing on the motion, the district court clarified its findings as to the continuances granted on September 5, 2006 and August 28, 2007. The district court explained that at the time those continuances were granted, this court had not issued its decision in *United States v. Williams*, 511 F.3d 1044 (10th Cir. 2007). The district court acknowledged that, in light of *Williams*, its findings for those two continuances were not sufficient. To remedy the perceived deficiencies, the district court stated that in granting the motions it considered

defense counsel's statements that additional time was needed to review discovery in order to effectively prepare for trial and weighed this against the interests of Toombs and the public in a speedy trial. The district court explained that while adding such findings to the record so long after granting the continuances was not the preferred practice, it was nonetheless appropriate because the court had made the findings when it initially granted the motions. The district court then concluded Toombs's rights under the Speedy Trial Act had not been violated because for each continuance it had properly balanced the appropriate considerations and included its findings in the record. The district court therefore denied the motion to dismiss.

Toombs's trial began on March 4, 2008. The jury returned a guilty verdict on all counts and the district court sentenced Toombs to thirty-five years' imprisonment. On appeal, Toombs claims, *inter alia*,[4] that the district erred in denying his motions to dismiss for violations of the Speedy Trial Act and the Sixth Amendment right to a speedy trial.

---

[4]Toombs also claims the district court erred in denying his motion to sever and improperly calculating his sentence. Because we conclude a violation of the Speedy Trial Act has occurred, we do not address these other potential grounds for reversal.

**III. DISCUSSION**

    *A.    The Speedy Trial Act*

    "We apply an abuse of discretion standard to a district court's decision to grant an ends-of-justice continuance . . . ." *United States v. Gonzales*, 137 F.3d 1431, 1433 (10th Cir. 1998). This court reviews de novo, however, the district court's compliance with the legal requirements of the Speedy Trial Act. *United States v. Thompson*, 524 F.3d 1126, 1131 (10th Cir. 2008). The district court's factual findings are reviewed for clear error. *Id.* "The Speedy Trial Act is designed to protect a criminal defendant's constitutional right to a speedy trial and serve the public interest in bringing prompt criminal proceedings." *Id.* It requires that a criminal trial commence within seventy days of the filing of the indictment or information or the defendant's appearance, whichever occurs last.[5] 18 U.S.C. § 3161(c)(1). Excluded from the seventy-day requirement is:

> Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial.

*Id.* § 3161(h)(7)(A).

    In order to exclude this time pursuant to the ends-of-justice provision, however, the Speedy Trial Act requires that "the court sets forth, in the record of

---

[5]The later event here was Toombs's first appearance in court, which was his arraignment on May 2, 2006.

the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." *Id.* In doing so, the judge must consider:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> (iii) Whether, in a case in which arrest precedes indictment, delay in the filing of the indictment is caused because the arrest occurs at a time such that it is unreasonable to expect return and filing of the indictment within the period specified in section 3161(b), or because the facts upon which the grand jury must base its determination are unusual or complex.
>
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

*Id.* § 3161(h)(7)(B)(i)-(iv).

"Th[e] [ends-of-justice] exception to the otherwise precise requirements of the Act was meant to be a rarely used tool for those cases demanding more flexible treatment." *United States v. Doran*, 882 F.2d 1511, 1515 (10th Cir.

1989) (quotation omitted).  The requirement that the district court make clear on the record its reasons for granting an ends-of-justice continuance serves two core purposes.  *Id.*  It both ensures the district court considers the relevant factors and provides this court with an adequate record to review.  *Id.*  "Failure to address [the reasons] on the record creates the unnecessary risk of granting continuances for the wrong purposes, and encourages overuse of this narrow exception."  *Id.*  Thus, "the record must clearly establish the district court considered the proper factors at the time such a continuance was granted."  *Gonzales*, 137 F.3d at 1433.  "In setting forth its findings, however, the district court need not articulate facts which are obvious and set forth in the motion for the continuance itself."  *United States v. Occhipinti*, 998 F.2d 791, 797 (10th Cir. 1993) (quotation omitted).  While the preferred practice is for the district court to make its findings on the record at the time the continuance is granted, findings made contemporaneously with the granting of the continuance may be entered on the record after the fact if done before the court rules on a defendant's motion to dismiss.  *Zedner v. United States*, 547 U.S. 489, 506-07 & n.7 (2006).

Toombs claims the district court made insufficient findings as to the seven continuances expressly granted pursuant to the ends-of-justice provision.  Fifty days in the approximately twenty-two month period between Toombs's arraignment and trial date were not excluded by the district court for Speedy Trial

Act purposes.[6]  Because pursuant to each of the seven challenged continuances the district court excluded over twenty days, if any one of the continuances was granted in error, a violation of the seventy-day requirement of the Speedy Trial Act would exist.  18 U.S.C. § 3161(c)(1).

The record is particularly sparse with regard to the district court's findings underlying two of the ends-of-justice continuances.  The May 1, 2007, order states in relevant part:

> The Court, having been well and duly advised in the premises, finds that the motion should be granted in order for the defense to adequately prepare and for the reasons stated in the motion.
>
> The Court further finds that the period of delay resulting from the continuance granted pursuant to this order shall be excludable time as provided for in 18 U.S.C. [§ 3161(h)(7)] in that the ends of justice served by the granting of such continuance outweigh the best interest of the public and the defendant in a speedy trial.

The motion to which this order refers, filed on April 30, 2007, states that a continuance is requested on the following grounds:

> 1. This case is scheduled for Jury Trial commencing May 7, 2007 at 1:30 p.m.
>
> 2. That additional discovery has recently been disclosed to Defendant requiring additional investigation.
>
> 3. The Assistant United States Attorney has advised that she has no objection to this request.

---

[6] The relevant time periods are May 2, 2006, through May 22, 2006, and August 1, 2006, through August 30, 2006.

4. This application for continuance is made in good faith on the grounds stated and not to vex or harass the Court or the United States of America.

5. The ends of justice will be served by taking such action which outweighs the best interest of the public and the defendant in a speedy trial pursuant to [18 U.S.C. § 3161(h)(7)(A)].

The motion to continue filed July 5, 2007, is in all material respects identical to the April 30, 2007, motion. Similarly, with the exception of the dates provided, the district court's July 10, 2007, order granting the July 5, 2007, motion to continue is identical to its May 1, 2007, order granting the April 30, 2007, motion to continue.

In *Gonzales*, this court considered whether a district court made sufficient findings under the Speedy Trial Act when it granted an ends-of-justice continuance to the prosecution. 137 F.3d at 1434-35. In the hearing to set a trial date, the district court suggested two dates, August 5 and August 19. *Id.* at 1434. The prosecutor claimed neither would work because he was going to be out of town on the days preceding each of the dates, rendering it difficult for him to prepare for trial. *Id.* The court suggested a third option, August 26, to which the prosecutor agreed, but to which the defense objected on Speedy Trial Act grounds. *Id.* After briefly questioning the prosecutor about why he would be out of town for the week preceding August 19, the court again suggested August 5. *Id.* The prosecutor stated he had three witnesses scheduled to leave town during the weeks preceding August 5 and he did not know when they would return. *Id.*

Thus, he contended it would be extremely difficult to have the trial on that date. *Id.* Based upon this information, the court set the trial date for August 26 and granted an ends-of-justice continuance excluding the relevant time period. *Id.* The written order stated in relevant part that the time was excluded for purposes of the Speedy Trial Act because the interests of justice outweighed the interest of the public and the defendant in a speedy trial "based upon the finding that [government] counsel . . . would be denied the reasonable and necessary time to prepare for trial, taking into account due diligence, and risks which cause a potential miscarriage of justice and risk the continuity of [government] counsel." *Id.*

This court considered both the statements made by the prosecutor and district court during the hearing and the content of the later written order, and concluded the district court failed to create an adequate record of its reasons for granting the continuance. *Id.* at 1434-35. This court noted a number of problems. *Id.* First, the district court had not inquired into the nature or complexity of the case at issue as required by § 3161(h)(7)(B)(ii) and (iv). *Id.* at 1434. In addition, there was no inquiry as to whether continuity of counsel was necessary or whether the case could be tried by other government counsel. *Id.* at 1434-35 (citing § 3161(h)(7)(B)(iv)). There was also no inquiry concerning the reason the prosecutor would be out of town during the week preceding the proposed August 5 trial date, whether counsel's trip could be rescheduled, or when the witnesses

would return.  *Id.* at 1435.  Finally, there was no mention of how much time the

prosecutor actually needed to prepare for trial or what preparations he had already

made.  *Id.*  The court concluded that:

> Without this information, we fail to see how the district court
> adequately could have determined whether denial of a continuance
> would have deprived the prosecutor of "reasonable time necessary
> for effective preparation," 18 U.S.C. § [3161(h)(7)(B)(iv)], *let alone*
> whether the purported reasons for granting the continuance
> outweighed the best interests of the public and Gonzales in a speedy
> trial.

*Id.* (emphasis added).

This court also considered a district court's grant of an ends-of-justice

continuance in *Williams*.  511 F.3d at 1055-59.  The defendant in *Williams*

requested a continuance on the grounds his new attorney needed additional time

to become familiar with the case.  *Id.* at 1057.  The district court noted the

presence of new counsel and granted the motion to continue, excluding the

relevant time period for purposes of the Speedy Trial Act.  *Id.*  This court first

acknowledged the district court need not articulate facts that are obvious and set

forth in the motion to continue in granting an ends-of-justice continuance.  *Id.*  It

nonetheless concluded the district court's findings were insufficient for purposes

of the Speedy Trial Act, stating:

> Although the district court in this case mentioned the presence of
> new counsel in its November 22 order, it did not issue findings
> specifically addressing Mr. Williams's stated grounds for a
> continuance, i.e., his new counsel's claimed need for time to
> familiarize himself with the case.  Nor did the district court

-14-

otherwise comment on the issue of trial preparation time. Furthermore, the court's order does not so much as hint that it weighed the proper factors under the Act. Indeed, the court failed to cite the Act's ends-of-justice provision. Thus, we conclude that the district court did not properly exclude [the relevant periods] under the Act.

*Id.* at 1058.

Our decisions in *Williams* and *Gonzales* indicate that the record, which includes the oral and written statements of both the district court and the moving party, must contain an explanation of why the mere occurrence of the event identified by the party as necessitating the continuance results in the need for additional time.[7] *Williams*, 511 F.3d at 1058; *Gonzales*, 137 F.3d at 1434-35. A record consisting of only short, conclusory statements lacking in detail is insufficient. For example, it is insufficient to merely state that counsel is new and thus needs more time to adequately prepare for trial or that counsel or witnesses will be out of town in the weeks preceding trial and therefore more time is needed to prepare for trial. *Williams*, 511 F.3d at 1058; *Gonzales*, 137 F.3d at 1434-35. Simply identifying an event, and adding the conclusory statement that the event requires more time for counsel to prepare, is not enough. *Williams*, 511 F.3d at 1058; *Gonzales*, 137 F.3d at 1434-35.

---

[7]While the government and dissent seek to distinguish *Williams* on the basis that, unlike here, the district court in *Williams* did not cite to the ends-of-justice provision of the Speedy Trial Act, it is clear from the portion of the opinion quoted above that the lack of a citation to the ends-of-justice provision was not the only reason the record in *Williams* was found to be insufficient.

Under this standard, the reasoning contained in the record for the May and July 2007 ends-of-justice continuances is inadequate. The sole explanation contained in the record for each of the continuances is that discovery was recently disclosed and counsel consequently needed additional time to prepare for trial. The district court here, much like the district courts in *Williams* and *Gonzales*, failed to inquire about or consider whether the respective events at issue necessarily required additional preparation. There is no indication from either Toombs's motions or the district court's orders as to the nature of the recently disclosed discovery, the relevance or importance of the discovery, or why the district court thought it proper to grant an approximately two-month continuance in each of the orders. Instead, the court twice erroneously relied upon conclusory statements lacking both detail and support in granting the continuances.

The case relied upon by the government on appeal and the district court in denying Toombs's motion to dismiss, *Occhipinti*, 998 F.2d 791, is factually distinguishable from the instant case. In *Occhipinti*, the government sought a continuance on the grounds that it needed more time to prepare for trial. *Id.* at 797. In its motion to continue, the government explained that it expected the defendant's trial to last for ten to fifteen days and that over the next two months counsel was scheduled for three conflicting trials. *Id.* The motion provided the dates of those trials and the length of time the government expected each trial to last. *Id.* The motion further stated that because of the conflicting trials, the

government would not have adequate time to prepare for the trial at issue. *Id.* In its order, the district court concluded a continuance was necessary to give the government time to prepare and excluded the time pursuant to the ends-of-justice provision of the Speedy Trial Act. *Id.* This court concluded that the record was sufficient, although a "more thorough and explicit articulation might have better facilitated our review of the district court's decision." *Id.* at 798.

Based upon our holdings in *Gonzales* and *Williams*, it is safe to say that in *Occhipinti* the district court made the minimal findings necessary for this court to conclude the record was sufficient under the ends-of-justice provision of the Speedy Trial Act. *See Williams*, 511 F.3d at 1058 (noting that this court "did not even find *Occhipinti*'s [findings] to be optimally thorough and explicit" (quotation omitted)); *Gonzales*, 137 F.3d at 1434-35. In *Occhipinti*, the government's listing of the dates for each of the three other trials and their expected durations provided an explanation, although not optimally detailed, of why these events, the trials, would require additional time for the government to prepare for the upcoming trial, which it expected to last for ten to fifteen days. Here, unlike in *Occhipinti*, there is no absolutely no explanation in the record for why the events, receiving newly disclosed discovery, resulted in defense counsel requiring additional time to prepare for trial. There was no discussion whatsoever in the May and July 2007 motions and orders regarding the nature or importance of the disclosed discovery or the nature of the further investigation allegedly

required and no hearings took place. Thus, the record does not satisfy even the minimal threshold set forth in *Occhipinti*.

Were the Speedy Trial Act to be applied as proposed by the dissent, this court's precedent and the words of Congress would be eviscerated. According to the dissent, all that is required for the granting of an ends-of-justice continuance is what occurred in this case: a motion containing only conclusory statements indicating as generally as possible in two one-sentence paragraphs that the disclosure of new evidence requires additional investigation and the ends of justice would be served by a continuance. As in this case, there is no need for a hearing. Nor is there a need to inquire as to the nature, extent, or quantity of the new evidence.[8] Finally, there is no need to inquire even as to the amount of time needed.

The dissent presents no authority for the ease with which it proposes to authorize continuances under the Speedy Trial Act. The approach advanced by the dissent would encourage greater reliance on the narrow ends-of-justice

---

[8]The dissent states our precedent does not require inquiry. Dissenting Op. at 7. *United States v. Gonzales*, however, was explicitly premised on the improper lack of inquiry by the district court regarding the details underlying the claimed need for an ends-of-justice continuance. 137 F.3d 1431, 1434 (10th Cir. 1998) (concluding a speedy trial violation occurred based on the "complete lack of inquiry" by the district court as to certain factors underlying the continuance request and inquiry that was not "adequate" as to other considerations). The dissent also suggests that to make inquiry of defense counsel regarding the general nature of the newly disclosed discovery would somehow risk tipping off the prosecution. Dissenting Op. at 7. That risk, however, is non-existent when, as here, the new evidence was provided by the prosecution itself.

provision, contrary to precedent.  *Doran*, 882 F.2d at 1515 ("This exception to the otherwise precise requirements of the Act was meant to be a rarely used tool for those cases demanding more flexible treatment." (quotation omitted)).  This case is illustrative.  Nine trial continuances were granted over the twenty-months from arraignment to trial, seven of which were premised on the ends-of-justice provision.[9]

While the dissent attributes some significance to the fact that "most of the delays in this case [were] attributable to the defendant," Dissenting Op. at 3, defense responsibility for continuances does not unwind Speedy Trial Act violations.  The Speedy Trial Act was intended not only to protect the interests of defendants, but was also "designed with the public interest firmly in mind."  *Zedner*, 547 U.S. at 501.  The ends-of-justice provision expressly mandates that the district court articulate "its reasons for finding that the ends of justice served by the granting of such continuance outweigh the *best interests of the public* and the defendant in a speedy trial."  18 U.S.C. § 3161(h)(7)(A) (emphasis added).  It is the responsibility of not only the district court, but also the government, to protect the interests of the public by ensuring adherence to the requirements of the Speedy Trial Act.  *See United States v. Wright*, 6 F.3d 811, 814 (D.C. Cir. 1993) ("[T]he Government bears a large part of the responsibility for bringing a

---

[9]If any one of the seven continuances were erroneously granted, a Speedy Trial Act violation occurred.

defendant to trial within the statutory period . . . .").  Thus, the district court and government are no less responsible under the Speedy Trial Act merely because it is a defendant who requests a continuance.  *See Zedner*, 547 U.S. at 493-95, 507 (concluding a violation of the Speedy Trial Act occurred when the district court failed to make adequate factual findings in granting an ends-of-justice continuance requested by the defendant).  The government was passive, it never objected to any of the continuances or so much as inquired before the court into their necessity.  By failing to make a record upon which adequate findings could be based, the district court failed to protect the public's interest in a speedy trial as required by the Speedy Trial Act and the clear application of that Act necessitates reversal of the district court's denial of the motion to dismiss.

B.     *The Sixth Amendment Right to a Speedy Trial*

Because a district court has discretion to dismiss the case with or without prejudice upon a Speedy Trial Act violation, we also consider Toombs's Sixth Amendment speedy trial claim, which, if successful, would require the district court to dismiss the case with prejudice.  *See Barker v. Wingo*, 407 U.S. 514, 522 (1972) ("The amorphous quality of the [Sixth Amendment speedy trial] right also leads to the unsatisfactorily severe remedy of dismissal of the indictment when the right has been deprived.  This is indeed a serious consequence because it means that a defendant who may be guilty of a serious crime will go free, without having been tried.").

"The Sixth Amendment guarantees all criminal defendants the right to a speedy trial . . . ." *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006). In determining whether a defendant's Sixth Amendment right to a speedy trial has been violated, a court must balance four factors: (1) the length of delay; (2) the reason for delay; (3) the defendant's assertion of his right; and (4) any prejudice to the defendant. *Barker*, 407 U.S. at 530. No one of the factors is necessary or sufficient to conclude a violation has occurred. *Id.* Instead, the factors are related and must be considered together along with other relevant circumstances. *United States v. Gomez*, 67 F.3d 1515, 1521 (10th Cir. 1995). "The first factor, length of delay, functions as a triggering mechanism" and "the remaining factors are examined only if the delay is long enough to be presumptively prejudicial." *Yehling*, 456 F.3d at 1243 (quotation omitted).

The parties agree that the length of delay is presumptively prejudicial, requiring this court to consider the other three factors in the analysis. As to the second factor, reason for the delay, seven of the nine continuances granted by the district court in this case were requested by Toombs. In addition, as the district court noted and the government points out, of the 671 days between the filing of Toombs's indictment and the start of his trial, 423 were attributable to motions filed by Toombs. Delays attributable to the defendant do not weigh in favor of a Sixth Amendment violation. *United States v. Dirden*, 38 F.3d 1131, 1138 (10th Cir. 1994). Because Toombs's actions were the primary cause of the delay, this

factor weighs heavily against Toombs. *See United States v. Abdush-Shakur*, 465 F.3d 458, 465 (10th Cir. 2006) ("We find little merit in defendant's assertion of his Sixth Amendment right to a speedy trial in the wake of the government's legitimate request for a continuance when the defendant has sat on his hands for seven months and requested several continuances of his own.").

As to the third factor, this court has stated that "the defendant's assertion of the speedy trial right is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right." *Dirden*, 38 F.3d at 1138 (quotation omitted). Toombs did not assert his Sixth Amendment right to a speedy trial until his October 29, 2007, motion to sever. By the time Toombs asserted his Sixth Amendment right, eight of the nine continuances, seven of which were requested by him, had already been granted and approximately seventeen months had passed since his first court appearance. Thus, this factor also weighs heavily against Toombs. *See United States v. Batie*, 433 F.3d 1287, 1292 (10th Cir. 2006) ("[Defendant's] persistent requests for continuances . . . scarcely demonstrate a desire for a speedier process.").

Finally, the fourth factor considers prejudice to the defendant resulting from the delay. *Yehling*, 456 U.S. at 1244. In *Doggett v. United States*, the Supreme Court held that if there is extreme delay, the defendant need not present specific evidence of prejudice and instead may rely on the presumption of prejudice created by the extreme delay. 505 U.S. 647, 655 (1992). The *Doggett*

Court concluded extreme delay existed when over eight years, six of which were attributable to the government, had passed between the defendant's indictment and trial. *Id.* at 657-58. The twenty-two month delay, here, however, the vast majority of which was attributable to the defense, is far shorter than the delay in *Doggett* and does not constitute extreme delay. *See United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) ("Indeed, this Court and others generally have found presumed prejudice only in cases in which the post-indictment delay lasted at least five years."). Thus, in determining whether Toombs has made a particularized showing of prejudice this court is to consider the three interests the speedy trial was designed to protect: (1) prevention of oppressive pretrial incarceration, (2) minimization of the accused's anxiety and concern, and (3) minimization of the possibility that a delay will hinder the defense. *Barker*, 407 U.S. at 532. The most important of these interests is the impairment or hindrance of the defense. *Id.* The individual claiming the Sixth Amendment violation has the burden of showing prejudice. *Yehling*, 456 F.3d at 1245. Furthermore, "once a defendant has been convicted, the rights of society increase in proportion to the rights of the defendant. Post-conviction prejudice therefore must be substantial and demonstrable." *Id.* (quotation and citation omitted).

Even assuming the first two interests, prevention of oppressive pretrial incarceration and minimization of the accused's anxiety and concern, weigh in

Toombs's favor, the third, and most important, does not. Toombs argues that the delay hindered his defense because during the relevant time period the government was able to locate and procure the testimony of his co-defendant and the primary witness against him, Arlynda Osborn, rendering the government's case much stronger. Toombs does not, however, claim his defense was hindered in the sense that he was not able to defend the charges against him to the extent he desired. This is not a situation where, for example, as a result of the delay, the defense no longer had access to certain evidence or could no longer use a witness because that witness died before trial. *See Jackson v. Ray*, 390 F.3d 1254, 1264 (10th Cir. 2004). Thus, Toombs's defense has not been hindered in the sense envisioned by the *Barker* analysis. *See Castro v. Ward*, 138 F.3d 810, 820 (10th Cir. 1998) (concluding no prejudice existed where "despite [petitioner's] general allegation that the passage of time made it more difficult for him to present a defense . . . [h]e has not claimed that any specific witness or evidence was somehow rendered unavailable or less persuasive because of the passage of time").

In addition, Toombs's multiple requests for continuances contributed significantly to the government's ability to locate and arrest Osborn. Three continuances, all requested by Toombs, were granted before the government sought additional time to locate Osborn. Moreover, an additional four continuances requested by Toombs were granted between the government's first

-24-

motion to continue in order to locate Osborn and the government's second motion to continue upon arresting Osborn. Toombs's motions to continue therefore provided the government with the time it needed to locate and arrest Osborn. Since the hindrance to the defense is the most important interest, and the defense was not significantly hindered here, the prejudice factor does not weigh in favor of Toombs. *See Batie*, 433 F.3d at 1293 ("Absent extraordinary circumstances, *Barker* counsels us not to find a violation of the right to a speedy trial when the defendant's actions indicate he had no desire for a speedy trial.").

Although the delay here was presumptively prejudicial, the second and third factors in the *Barker* analysis weigh heavily against Toombs, and the fourth does not weigh in his favor. In balancing the factors, it is clear Toombs has not made out a Sixth Amendment speedy trial violation. We therefore affirm the district court's denial of the motion to dismiss on Sixth Amendment speedy trial grounds.

## IV. CONCLUSION

For the reasons discussed above, we **affirm** the district court's denial of the motion to dismiss on Sixth Amendment speedy trial grounds, **reverse** the denial of the motion to dismiss on Speedy Trial Act grounds, and **remand** for proceedings consistent with this opinion. On remand, the district must decide whether to dismiss the indictment with or without prejudice. *Williams*, 511 F.3d at 1049 ("The sanction for violation of the Act is mandatory dismissal of the

-25-

indictment. 18 U.S.C. § 3162(a)(2).  However, the district court retains broad discretion whether to dismiss the indictment with or without prejudice." (quotations omitted)).

*United States v. Toombs*, 08-3278

**TYMKOVICH**, J., dissenting in part; concurring in part.


Because I conclude this case complied with the Speedy Trial Act and that the district court made adequate findings supporting the various ends-of-justice continuances, I respectfully dissent. I concur with the majority's disposition of the Sixth Amendment speedy trial claim.

## I.

"[C]riminal cases vary widely and . . . there are valid reasons for greater delay in particular cases"; therefore, the Speedy Trial Act offers "flexibility" by including "a long and detailed list of periods of delay that are excluded in computing the time within which trial must start." *Zedner v. United States*, 547 U.S. 489, 497 (2006). Examples of relevant exclusions include a "reasonable period of delay" attributable to a proceedings of a co-defendant, 18 U.S.C. § 3161(h)(6), and delay attributable to an ends-of-justice continuance. 18 U.S.C. § 3161(h)(7).

"Much of the Act's flexibility is furnished by § 3161(h)[(7)], which governs ends-of-justice continuances." *Zedner*, 547 U.S. at 498. This provision excludes "[a]ny period of delay resulting from a continuance granted by any judge . . . on the basis of . . . findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."

§ 3161(h)(7).  It "gives the district court discretion—within limits . . .— to accommodate limited delays for case-specific needs."  *Zedner*, 547 U.S. at 499.

As we have repeatedly emphasized, in granting an ends-of-justice continuance, the district court must set forth, "in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial."  § 3161(h)(7)(A); *United States v. Williams*, 511 F.3d 1044, 1056 (10th Cir. 2007) ("The Tenth Circuit [ ] recognizes the importance of enunciating the ends of justice findings.") (citation omitted).  "[I]t must be clear from the record that the trial court struck the proper balance when it granted the continuance."  *Williams*, 511 F.3d at 1056 (citing *United States v. Spring*, 80 F.3d 1450, 1456 (10th Cir. 1996)).  Although the court's consideration of the factors must be contemporaneous with granting the continuance, the court may delay in entering its findings on the record.  *See, e.g.*, *United States v. Hill*, 197 F.3d 436, 441 (10th Cir. 1999).

Our cases do not require the court to rehash facts which are obvious or adequately set forth in the motion for the continuance itself.  *United States v. Occhipinti*, 998 F.2d 791, 797 (10th Cir. 1993).  Moreover, although we require an adequate explanation of the grounds for granting a continuance, the district court's ends-of-justice findings need only be minimally sufficient to allow judicial review.  *See id.* at 798 (noting that a more thorough articulation would have been better,

-2-

but concluding the findings were sufficient); *see also Spring*, 80 F.3d at 1457 (finding that although the district court's oral ends-of-justice findings were "not a model of clarity," they were sufficient, and observing that "what is clear is that the reason for granting the continuance is that new counsel would be unable to prepare for the upcoming trial").

I disagree with the majority that this case suffers from the infirmities in *Williams*, 511 F.3d at 1056–58 or *United States v. Gonzales*, 137 F.3d 1431, 1433–35 (10th Cir. 1998). Instead, I conclude this case comported with the Speedy Trial Act's requirements and that the district court made adequate findings supporting the various ends-of-justice continuances. I would therefore affirm.

I also hasten to add that most of the delays in this case are attributable to the defendant. Seven of nine continuances were filed by defense counsel, accounting for approximately two-thirds of the trial delay. While that fact does not overcome the public's interest in a speedy trial, the public's concern is mitigated where defense counsel contends that the additional time is necessary for an adequate defense at trial. The public has little interest in defense counsel rushing to trial inadequately prepared.

## II.

The majority takes issue with the district court's two continuances of May 1, 2007 and July 10, 2007. As to each, defense counsel filed a motion seeking a continuance because additional discovery had been recently disclosed to the

defendant which required additional investigation. In the two orders, the court observed that it had been provided sufficient information in support of the continuances, and found they should be granted "in order for the defense to adequately prepare and for the reasons stated in the motion[s]." Aplt. App. at 52, 56. The court further found that the period of delay resulting from the continuances would be excludable under the ends-of-justice provision in that the need for the continuance outweighed the interest of the public and the defendant in a speedy trial.

In my view, both of these orders are sufficient under our case law. The district court knew of the defendant's statutory speedy trial rights and provided a sufficient record that it had conducted the proper balancing when it granted the continuances. Whether the failure to grant a continuance would deny defense counsel reasonable time for necessary preparation is an appropriate factor for the court to consider in making an ends-of-justice determination. *See* § 3161(h)(7)(B)(iv); *see also Williams*, 511 F.3d at 1058 (noting that § 3161(h)(7)(B)(iv) authorizes a continuance to allow counsel adequate trial preparation time); *Spring*, 80 F.3d at 1457 (explaining that adequate preparation time is a permissible reason for granting a continuance). The court considered this factor, and was not required to address other factors that did not apply. *See Occhipinti*, 998 F.2d at 798 (explaining that the court articulated as the basis for its conclusion its belief that a continuance was necessary to allow the government

-4-

sufficient time to prepare for trial and that we "do not require district judge's [sic] to address those factors that do not apply").[1]

In sum, the court weighed defense counsel's need for time against the public and defendant's interest in a speedy trial, and made sufficient findings. The court articulated a proper basis for its conclusion that the continuances were appropriate despite speedy trial interests, and that the need for time to adequately prepare outweighed those speedy trial interests. The court expressly referenced the reasons in defense counsel's motion, and that motion explained that additional discovery recently had been disclosed to the defendant requiring additional investigation. The court need not state the obvious, and although more thorough findings might have been helpful, our precedent does not require more. *See Occhipinti*, 998 F.2d at 797–98 (concluding the findings supporting the continuance were sufficient when the district court recognized the government's need for time to prepare, endorsed the reasons the government raised in its motion, and explicitly stated that "the period of delay resulting from the continuance granted pursuant to this Order shall be excludable time as provided in 18 U.S.C.

---

[1] The fourth factor, § 3161(h)(7)(B)(iv), instructs courts to consider "[w]hether the failure to grant such a continuance in a case which, *taken as a whole, is not so unusual or complex as to fall within clause (ii)*," would deny counsel for the defendant reasonable time necessary for effective preparation. § 3161(h)(7)(B)(iv) (emphasis added).

§ 3161(h)[(7)] in that the ends of justice served by the granting of such continuance outweigh the best interest of the public and the defendant in a speedy trial").

This case is distinct from both *Williams*, 511 F.3d at 1056–58, and *Gonzales*, 137 F.3d at 1433, on which the majority relies. First, in *Williams*, the district court's orders did not contain *any* findings or were especially conclusory, the court did not hint that it weighed the relevant factors, and, finally, the court did not even cite the Act's ends-of-justice provision. 511 F.3d at 1057–58. Unlike here, none of the orders at issue in *Williams* included findings addressing Williams's stated grounds for a continuance—his new counsel's claimed need for time to familiarize himself with the case, or the need for more time to prepare for trial. *Id.* at 1058. Instead, the court merely noted the presence of new counsel and granted the continuance. *Id.* In contrast, in this case the court specifically recognized counsel's need for additional time to prepare, referenced the reasons outlined in counsel's motion—namely that new discovery had arrived requiring additional investigation—and concluded the continuance served the ends of justice. Although the majority sees it differently, *Williams* is readily distinguishable from this case, and not solely because the court there failed to cite the ends-of-justice provision.

*Gonzales*, too, is distinct from this case. There, the prosecutor argued he would be out of town on days preceding prospective trial dates, which would

render it difficult for him to prepare for trial. 137 F.3d at 1434. As to an additional proposed trial date, the prosecutor stated he had witnesses scheduled to leave town during the weeks preceding that date and he did not know when they would return. *Id.* The court then granted an ends of justice continuance because counsel would be denied reasonable and necessary time to prepare for trial. *Id.* We found this insufficient, emphasizing the lack of inquiry into whether the case could be tried by another prosecutor, why the prosecutor would be out of town, whether the trip could be rescheduled, when witnesses would return, the complexity of the case, or what preparations had already been made. *Id.* at 1434–35.

In contrast, here, defense counsel informed the court that additional discovery recently had been disclosed, and that the additional discovery required further investigation. Even if significant preparations had already been made prior to the arrival of the discovery, new discovery could require additional preparation, and counsel here attested that the discovery did in fact require more investigation. Although the majority appears to mandate that the district court inquire into the exact nature of the additional discovery, neither the Act nor our precedent requires this. And any inquiry should be contextual. For instance, defense counsel may not want to tip off the prosecution why an additional investigation is necessary. Moreover, the very reason additional time is necessary is that counsel needs time to figure out the effect of new discovery on trial strategy and to investigate

-7-

potential leads created by that discovery. Thus, counsel seeking additional time may not yet know the full implications of the discovery. It is enough that defense counsel, as an officer of the court, represented to the court that recently disclosed discovery merited additional investigation. Nothing on this record suggests the request lacked merit or was made in bad faith, and I would leave the policing of the outer limits of an ends-of-justice continuance to the sound discretion of the district court.

I nonetheless do not mean to imply that it would not have been helpful for the court to inquire into the amount of discovery, or into counsel's impressions of it. I merely would hold that although the court's findings and inquiries could have been better, they were sufficient. Indeed, the court recognized counsel's need for additional time, referenced the reasons elucidated in counsel's motion, and explicitly concluded that the ends of justice were served by the grant of the continuance here. The court weighed counsel's need for time to prepare against the defendant's and public's speedy trial interests, and it was clear from the record that "the trial court struck the proper balance when it granted the continuance." *Williams*, 511 F.3d at 1056 (citing *Spring*, 80 F.3d at 1456). Nothing more is required.